IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LONG CORNER CONSUMER ELECTRONICS LLC,<br><br>Plaintiff,<br>v.<br><br>ACER AMERICA CORP., *et al.,*<br><br>Defendants. | Case No. 2:13-cv-998<br><br>LEAD CASE |

## OPPOSED MOTION FOR ENTRY OF PROTECTIVE ORDER

Pursuant to the Court's Orders and the scheduling order in this case, the parties have met and conferred at length regarding a Protective Order for this case. The parties agree to and move for the entry of a Protective Order; however, three (3) sections remain in dispute between the parties regarding certain terms of the Protective Order. The disputes are in sections 5, 12, and 13 of the proposed Protective Order.

The parties' respective positions are set forth below. Attached hereto is the proposed Protective Order containing the parties' competing proposals for the disputed provisions.

A.      **Plaintiff Long Corner's Position Statement Regarding Protective Order:**

The party seeking a protective order has the burden of proving that good cause exists for entry of the order.  *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).  Where, as here, the parties agree to the entry of a protective order but disagree on specific terms, the party seeking to limit discovery shoulders the burden of establishing that good cause exists for the requested restriction.  *See Smartflash LLC v. Apple Inc.*, No. 6:13-cv-447, Dkt. No. 139, slip op. at 2 (E.D. Tex. May 12, 2014) (Mitchell, J.) (*citing Document Generation Corp. v. Allscripts, LLC*, 2009 WL 1766096 at *2 (E.D. Tex. June 23, 2009)).

With respect to each of the terms in dispute here, Defendants are requesting a restriction on access to and/or use of discoverable information.  Accordingly, Defendants bear the burden of establishing good cause for each proposed restriction.  Defendants have failed to establish good cause for each additional restriction that they seek.

Long Corner's positions on the three disputed provisions are as follows:

1.      **Section 5 – Unjustified Restrictions on Consultants and Storage**

This provision relates to severe restrictions that Defendants wish to place on Long Corner's ability to retain consultants and maintain confidential documents, and appears to be sought entirely by Defendant Apple.[1]

Apple seeks to impose two severe restrictions on Long Corner – one, that Long Corner can only retain experts and consultants who are **_located within the United States and are United States citizens,_** and two, that all Protected Material must be stored and maintained by a receiving party in the Unites States (again, basically prohibiting consultants outside the United States).

---

[1] It is Plaintiff's understanding that this provision is inapplicable to the other two remaining defendants, Asus and Lenovo.

2

Apple's purported justification for this highly restrictive provision is that Apple **_might_** produce in this case some materials that are subject to U.S. Export Administration Regulations, 15 C.F.R. §§730-774.  Based on the meet-and-confers on this issue, Apple does not even contend at this time that Apple will be producing (or required to produce) any documents or other information that is subject to these regulations, only that it **_might_**.  Apple has not identified any documents or other information that it believes is subject to the Export Regulations that will be required to produce or that it reasonably expects to be produced.  The mere possibility that information subject to Export Regulations might be produced in discovery does not justify this wide-sweeping restriction on Long Corner's ability to retain experts and consultants and prosecute its case.

Long Corner is sensitive to the potential for an issue with respect to U.S. Export Regulations, and accordingly, Long Corner has proposed a provision that if a producing party believes that any documents or other information subject to the Export Regulations needs to be produced, the producing party will identify to the receiving party the types of documents, and the Parties can negotiate provisions for a Supplemental Protective Order to govern these particular documents.  If the documents are crucial to expert issues in the case, then Long Corner may choose to retain an expert who is qualified to receive information subject to the Export Regulations; or, if such documents are not crucial, Long Corner may choose to not disclose them to any expert.  Long Corner's proposed language is a rifle-shot solution to a narrow issue; Apple's proposed solution is a shotgun blast that is entirely overbroad.

Long Corner also notes that this issue is not a theoretical one, but one that is real and present.  A consultant that Long Corner has worked with to date is located outside the United States, and the proposed provision would preclude Long Corner from using this person.   In

addition, the pool of potentially available experts in this technical field is narrow to begin with, especially once those with conflicts with respect to Apple or other defendants are eliminated, and eliminating foreign nationals and persons outside the U.S. from consideration further narrows the field in a significant way.

Apple has failed to meet its burden to justify the highly restrictive provision it proposes that would eliminate all foreign nationals and all persons located outside the United States from being used by Long Corner as experts or consultants in this case.

**2.      Section 12 – Unjustified Restrictions on Source Code Review and Use**

Section 12 relates to protective order provisions governing source code review and use. Long Corner has proposed that the Protective Order provisions that are included in Judge Gilstrap's standard protective order for patent cases in his Court in this District.[2]  In this instance in particular, Judge Gilstrap's standard protective order is a concise, balanced order that has been considered at length by the highly experienced district judge who apparently oversees more patent cases than any other district judge in the United States.  Long Corner submits that there is no particular reason why this case stands out from others in the District with respect to Protective Order reasons, and no compelling reason for the Court to deviate from this standard order and standard practice in the District.[3]

Defendants' proposed source code provisions attempt to add numerous obligations and restrictions that are uniformly unfavorable to Long Corner and designed to make source code

---

[2] This case was originally assigned to Judge Gilstrap, but was recently transferred to Judge Bryson, sitting by designation.  Long Corner's understanding is that the Court will typically follow standard procedures of the Eastern District of Texas.  Judge Gilstrap's standard protective order is a particularly appropriate default for the Court in this instance, because the case started with him.

[3] Long Corner notes that it has accepted a few of Defendants' proposed modifications to the Court's standard protective order, so that Long Corner's proposed order does not perfectly track the standard order; however, the vast majority of the Court's standard order remains intact in Long Corner's proposed order.

review more onerous and more costly, and also designed to give the Defendants ways to "burn the clock" in the litigation.  This case is already on a relatively fast track, with only 13½ months from the time the agreed procedural orders are being submitted until jury selection.  Virtually all discovery will have to be done very early in the case, as there is less than a week between the Markman hearing (February 4, 2015) and the close of fact discovery (February 9, 2015).  The numerous additional restrictions proposed by Defendants include:

(a)     Restricting access to <u>one</u> stand-alone computer, as opposed to the Court's standard order which contemplates the possibility of source code production on multiple stand-alone computers.

(b)     Eliminating the standard requirement that the stand-alone computer(s) be connected to a device capable of temporarily storing electronic copies solely for the limited purposes set forth in the standard protective order.

(c)     Requiring 30 days' notice for the first inspection of source code and 14 days' notice for subsequent inspections.

(d)     Requiring 21 days' advance notice for installation of software tools to facilitate source code review.

(e)     Prohibiting reviewers from taking notes on any electronic devices.

(f)     Prohibiting reviewers from taking any computer at all into the source code room.

(g)     Permitting the producing party to visually monitor the activities of the source code reviewers.

(h)     Completely prohibiting any making of electronic copies of source code, even for the limited purposes set forth in the Court's standard protective order.

(i)      Requiring a separate negotiation and conference regarding filing of source code with the Court, as opposed to the standard practice of filing under seal, as permitted by the Court's standard order.

(j)      Imposing a presumptive 5-page limit on printouts of continuous blocks of source code and 20 pages total.

(k)      Permitting the producing party to withhold those portions of source code selected for printing for 14 days, and then requiring a meet and confer and briefing if the producing party objects to the printing and production.

(l)      Requiring the receiving party to create and maintain burdensome and detailed logs regarding source code access and storage that must be produced to the producing party upon demand.

(m)      Eliminating the ability to use source code at depositions, except with 10 days' advance notice, and prohibiting the receiving party from bringing copies of the code it wishes to use.

(n)      Removing all ability to transport source code electronically for purposes of depositions and court proceedings, as permitted under the Court's standard order.

Each of these restrictions, standing alone, is unjustified and problematic, and represents a departure from the standard Protective Order.  Taken together, they are egregious, vastly overbroad, and overreaching.  Defendants appear to be trying to win this case on burden and procedural technicalities, rather than permitting a fair adjudication on the merits.

A quick discussion of each additional restriction that Defendants seek to impose follows (using the lettering scheme from Long Corner's list above as to the various restrictions that Defendants seek to impose):

6

(a)      There is no need to presumptively impose a limitation of one stand-alone computer for source code review.  No defendant has produced source code to date or indicated the type or volume of code to be produced.  The standard order leaves flexibility to allow whatever number of computers are actually reasonable and necessary for source code review.

(b/h/n) In short, Defendants want source code to be handled and transported by way of paper copies only; Long Corner requests the provisions of the Court's standard order that permit copying and transportation of source code by electronic means, solely under the very limited circumstances and tight restrictions of the Court's standard order.  Long Corner submits that the Court's standard order is reasonable, that paper-only is more burdensome and restrictive and is at odds with modern life, and that paper-only does not reduce the risk of inadvertent loss or disclosure of information (in fact, paper copies are probably more likely to be lost, misplaced, or left in a room).

(c/d)    The notice periods proposed by Defendants for source code – 30 days' notice for an initial review and 14 days' notice for any subsequent review – are unnecessary in light of the Local Patent Rules, and in any event would be far too long and allow Defendants to "burn the clock" on discovery.  In this District, source code production for accused instrumentalities is mandated under Local Patent Rule 3-4(a) ("With the 'Invalidity Contentions,' the party opposing a claim of patent infringement must produce or make available for inspection and copying: (a) Source code, specifications, [etc.] sufficient to show the operation of any aspects or elements of an Accused Instrumentality…."); *see also Edward D. Ioli Trust v. Avigilon Corp.*, 2012 WL 5830711 at *3 (E.D. Tex. Nov. 16, 2012) (Gilstrap, J.) (recognizing the Patent Rules "are not like other forms of discovery which require a formal request by the opposing party.  Rather, it is the responsibility of the party itself to make disclosures that satisfy the Rules").  No further request

by the plaintiff is necessary.  Under the Docket Control Order in this case (Dkt. No. 47), source code production is due on July 24, 2014, along with other P.R. 3-3 and 3-4 disclosures.  This is the date by which Defendants should have gathered relevant source code for review.  Additional notice periods are not contained in the Docket Control Order or in the standard protective order.  Accordingly, Defendants' extremely long notice periods are inappropriate and in conflict with Defendants' responsibilities under the Local Patent Rules and case law in the District.[4]

A similar analysis holds for the lengthy notice period Defendants propose for installation of software tools on the review computers – 21 days' advance notice is unreasonable.  Often, the need for these tools is not known until a review process begins, and the Defendants' proposed provision would allow Defendants to impose a unilateral three-week roadblock on Long Corner's source code review under those circumstances.[5]

(e/f/g)  These provisions relate to what a person reviewing source code may bring into the room containing the stand-alone computer with the source code, and whether the producing party may "visually monitor" the activities of the source code reviewers.  The Court's standard protective order does not contain any restrictions on what a person reviewing source code may bring into the room.  The Court's standard order, of course, is a balanced order that has been well-thought-out and refined over time by people with vast experience with patent infringement litigation in this District.  It also has the benefit of minimizing disputes.

---

[4] Long Corner recognizes that as a practical matter, short notice periods for source code review are often included in protective orders in this District and can be helpful in coordinating and preventing disputes over the timing for review.  Long Corner would not oppose a short, reasonable notice period, such as five (5) days' notice for the initial review and two (2) days' notice for subsequent reviews, and Long Corner has actually included these notice periods in its proposed order.

[5] Long Corner has included a provision in its proposed order that would provide for three (3) days' notice on a best efforts basis, so long as the provision is not used to block or suspend an ongoing review.

Defendants have not justified a departure from the Court's standard order with respect to these provisions and have not shown good cause for their proposed restrictions, which is to impose detailed and meaningful restrictions on what may be brought into the source code review room.  Defendants want no computers at all in the source code room.[6]  This request goes too far. It is a fact of modern life that people need their telephones and often their computers at their side, to attend to normal business and perhaps even to receive calls and email messages from family. Having phones and computers allows the source code reviewers to communicate with outside counsel, and to investigate on the Internet issues that might arise from their source code review. These are useful and helpful things and do not result in an undue risk of inappropriate disclosure.

 In addition, Defendants want to be able to order persons reviewing code to "visually monitor" source code reviewers to verify adherence to the Protective Order.  The Protective Order itself is clear that no person reviewing code may make any copies of the code other than through the processes set forth in the Protective Order.  This is sufficient protection to satisfy Defendants' supposed concern.  Long Corner's counsel has been involved in situations where parties have used a provision such as "visually monitoring" as a ticket to monitor the reviewer's work product and otherwise attempt to make the review process more difficult, which would be entirely inappropriate.

Long Corner respectfully submits that Defendants have not met their burden to impose these additional restrictions on what may be brought into a source code review room, and that the other provisions of the Court's standard order are perfectly sufficient to ensure compliance and allow for enforcement of any misuse of confidential information.

---

[6] It is not clear whether Defendants intend to ban cell phones from the source code review room as "computers," but in an abundance of caution, Long Corner has to assume that Defendants will take the position that a cell phone is a "computer" for purposes of these provisions.

(i/k)    These are additional, unjustified "burn the clock" provisions that Defendants seek to impose.  Again, the terms of the Court's standard order are sufficient.

(j)    The limits on printing source code that Defendants seek to impose are ridiculously low and inappropriate, and represent yet another attempt by Defendants to make source code review and use impossible as a practical matter.  Defendants also attempt to improperly shift the burden to Long Corner to prove that any printouts in excess of 5 continuous pages or 20 pages total is necessary, when the burden actually lies with Defendants to prove that a restriction is appropriate as shown by case law in the District.  *See, e.g., Smartflash v. Apple*, Case No. 6:13-cv-447 (Dkt. No. 139) (E.D. Tex. May 12, 2014) (Mitchell, Mag. J.) (granting request for a limitation of printing 40 continuous pages of source code, but not including any limitation on total pages of code, rejecting provisions requiring burdensome procedures to resolve source code disputes, and requiring Defendants to bear the burden of showing why they should not comply with a request for additional pages ("Generally, a party seeking to limit discovery bears the burden of showing good cause. [internal citations omitted]  Defendants have offered no reason why the burden should be shifted to the receiving party.  Thus, the producing party will bear the burden on any dispute over additional pages."); *Blue Calypso v. Groupon*, Case No. 6:12-cv-486 (Dkt. No. 157) (E.D. Tex. Oct. 24, 2013) (Schneider, J.) (rejecting defendant's request for a presumptive limitation of 50 printed source code pages, and noting that the provisions of the Local Rules are sufficient to govern discovery disputes).

(l)    This provision seeks to impose an undue burden on Long Corner, and more importantly, would give Defendants access into Long Corner's work product – specifically, who is reviewing what code and during what time period.  For these reasons, this provision is also unnecessary and inappropriate, and it is at odds with the Court's standard order.

(m)    The Court's standard order provides sufficient protection for the use of source code at depositions.  There is no legitimate justification for Defendants to receive 10 days' notice of the source code that Long Corner intends to use at a deposition. This is simply a poorly disguised attempt for Defendants to get an early peek into Long Corner's deposition questioning and preparation, which is an improper invasion of work product.

For all of the reasons set forth above, alone and in combination, Defendants have failed to satisfy their burden to justify the severe restrictions they seek to impose on source code review and use, and their proposals should be rejected in favor of the provisions of the Court's standard order with respect to source code.

### 3.    Section 13 – Unjustified Expansion of Prosecution Bar to Acquisition Advice

This provision in dispute in this Section is an attempt by Defendants to expand the prosecution bar, to also bar persons reviewing confidential information from giving advice on acquisitions.  This is a direct attack on Long Corner's litigation counsel and an attempt to limit the practice of such counsel.

Long Corner does not oppose an "acquisition bar" that is limited in scope to cover in-house persons, and it proposed that compromise to Defendants.   This highlights that the "acquisition bar" provision is directed toward Long Corner's outside counsel.

The standard protective order does not impose any "acquisition bar" of the sort proposed by Defendants.  In addition, Long Corner is not aware of any case in this District where an "acquisition bar" has been extended beyond persons who are competitive decision makers for a party.  In fact, case law in the District strongly suggests that an "acquisition bar" will not be imposed on any person who is not a competitive decision maker.  *See, e.g., Hyundai Motor America v. Clear With Computers, LLC*, 2009 WL 8657271 (E.D. Tex. May 11, 2009) (Davis, J.);

*ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*, 2008 WL 5634214) (E.D. Tex. March 14, 2008) (Love, Mag. J.).  As the courts noted in those cases, "[a]ccess to discovery can be denied *to competitive decision makers* who may inadvertently use the material for inappropriate purposes." *Hyundai*, 2009 WL 8657271 at *2 (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)).  "Courts consider the factual circumstances relating [to] the receiving person's activities, association, and relationship with the receiving party, whether the person receiving the confidential information is involved in competitive decision making or scientific research, the risk of inadvertent disclosure, the hardship imposed by the restriction, the timing, and the scope of the relief sought." *Hyundai*, 2009 WL 8657271 at *2.

Long Corner's outside counsel (of which the author of this document is the 100% owner) is not a competitive decision maker on behalf of any client.[7]  It does not and has never sought out patent acquisition opportunities for clients.  It does not and has never made any decision on behalf of any client with respect to patent acquisition.  Rather, the firm (among its other business) assists clients with licensing and litigation of patents.  The issue presented by the proposed "acquisition bar," however, has a clear potential impact on the firm's practice.  It is not unusual for a client to seek the firm's legal advice with respect to a potential acquisition; for instance, on potential validity issues, or on the strength or weakness of a potential infringement read.  This is legitimate activity, untainted by any confidential information to which the firm might have been exposed.  But Defendants' proposed "acquisition bar" would restrict this legitimate activity and result in chilling and potential adverse economic impact to the firm.  It appears clear that Defendants would raise the "acquisition bar" provision in any case subsequently filed by the firm in a related area of technology.

---

[7] If needed, counsel for Long Corner is willing to provide a declaration to support all factual statements made with respect to the firm herein.

In addition, the firm has never been accused of violating any protective order with respect to an acquisition (or any other violation, for that matter).  And until this case, this author does not recall any other defendant ever even requesting an "acquisition bar" as proposed by Defendants.

In sum, Defendants have not satisfied their burden to impose their proposed "acquisition bar," particularly as to Long Corner's outside counsel.  The balance of hardships and the factual analysis weigh against this provision. It should be rejected.

**B.     Defendants' Position Statement Regarding Protective Order:**

Defendants submit to the Court a proposed Protective Order ("Defendants' Proposed PO") that incorporates edits to Judge Gilstrap's sample order designed to tailor the protections therein to the specific circumstances of this matter, including the parties and their respective businesses and the types of confidential information they generate.  For the majority of the disputed provisions, Plaintiff submits the default language from Judge Gilstrap's sample Protective Order and fails to provide any reasonable basis for opposing Defendants' proposals.  While the sample order contains provisions that provide adequate protection of confidential information in some patent cases, the Defendants in this consolidated (for pretrial purposes) matter are technology-based companies engaged in innovative product development across a variety of technology areas, and are in some respects competitors.

Defendants' proprietary technical information and trade secrets are their most valuable asset.  Defendants' Proposed PO addresses several important requirements and procedures for protecting this proprietary information in ways that are not addressed by the sample order.  In contrast, Plaintiff is a non-practicing entity ("NPE") formed solely to assert the patent in suit.  It has little or no confidential information to protect, and certainly no confidential information flowing from research and development efforts in the hundreds of millions if not billions of

dollar, as do Defendants.  Cases like these consolidated cases illustrate that a one-size-fits-all protective order is not always the correct approach.  Indeed, this Court has, just in the last year, adopted protective orders containing nearly identical if not identical provisions to the disputed provisions in other cases involving technology companies like the Defendants.  *See* Protective Orders in: 2:13-cv-518-JRG (Dkt. No. 24, entered Nov. 13, 2013) (attached as Defs. Ex. 1); 2:13-cv-361-JRG (Dkt. No. 37, entered Sept. 10, 2013) (attached as Defs. Ex. 2); 2:13-cv-269-JRG (Lead Case) (Dkt. No. 71, entered Jan. 24, 2014) (attached as Defs. Ex. 3); and 2:13-cv-378-JRG (Lead Case) (Dkt. No. 66, entered Jan. 28, 2014) (attached as Defs. Ex. 4).

The additional provisions included in Defendants' Proposed PO have been carefully crafted based on Defendants' vast experience with patent litigation and issues that have arisen in past cases.  For instance, Defendants Apple alone has been sued more than 100 times in just the past year for patent infringement.  Its knowledge gained across all its cases informs Defendants' Proposed PO.  The same is true for the other defendants.

Each of the disputed provisions is addressed below and Defendants provide more than adequate justification for the requirements and protections they seek in their proposed PO.  For these reasons and those specifically identified below, the Court should adopt Defendants' Proposed PO.

1. <u>**Secure Storage and Compliance with U.S. Export Regulations**</u> -- *¶ 5 of PO*

All parties agree that protected information should be maintained in a secure manner to prevent unauthorized access.  However, Defendants' Proposed PO contains another important restriction—that the protected information of Defendant Apple Inc. be maintained by the Receiving Party in the United States to ensure compliance with applicable United States Export Administration Regulations.  The high-tech and proprietary nature of the information that will

likely be produced by Apple may be subject to U.S. Export Administration Regulations that restrict export out of the United States and disclosure to foreign persons and corporations. Violations can result in substantial penalties.

It is unclear why Plaintiff would object to such a provision.  Plaintiff is a Texas company with counsel located in Texas.  On information and belief, Plaintiff does not have any foreign affiliates or employees.  Thus, there would be no burden or prejudice to Plaintiff in complying with Defendants' proposal.

Moreover, Plaintiffs' proposal of negotiating provisions that address U.S. Export Administration Regulations in a "Supplemental Protective Order" is unnecessary.  Defendants' proposal already addresses this issue in a reasonable manner and would avoid the need for expending resources on this issue at some unknown point in the future.  If Plaintiffs are amenable to incorporating such provisions in a "supplemental" order, there is no reason to object to their adoption in the currently proposed protective order.

## 2.  <u>Disclosure and Review of Source Code</u> -- *¶ 12 of PO*

For the most part, the parties have agreed to comply with an extensive set of procedures and rules regarding the production, review, and treatment of source code. This agreement reflects that source code is often a company's most carefully guarded trade secret, deserving of the most stringent protective measures. Defendants' source code is no exception. Defendants' Proposed PO appropriately requires that access to source code be limited to inspection at a secure terminal with provisions to track the types of devices that may be permitted in the secure area, individuals who are given access, and the printing and distribution of portions of any source code relevant to this matter.  This District has repeatedly recognized that that source code is highly sensitive, highly valuable and should be protected accordingly.  *See, e.g.,* Order on Motions for Protective Order,

*Geotag, Inc. v Frontier Comms. Corp.*, 2:10-cv-265 (Dkt. 372) (Jan. 7, 2013) (explaining that additional protections were needed for source code because of its "highly confidential nature" and that the interests of protecting the code far outweighed the conveniences that plaintiff sought in accessing it). Defendants' Proposed PO provides a reasonable mechanism for marking source code materials so that the proper measures are taken to protect this especially valuable and sensitive information. If this information were to be widely disseminated in any manner, even inadvertently, Defendants would face potentially devastating competitive harm.

Plaintiff's objections are directed to specific requirements in the source code review provisions in Defendants' Proposed PO. Once again, Plaintiff fails to provide any basis for why these requirements are not justified. Defendants' bases and justification for including the provisions that appear to be the primary source of Plaintiff's objections are provided below.

- *Notice provisions (¶ 12(b))*: The requirement for 30 days notice prior to the first inspection of any requested source code is necessary as a practical matter, so that Defendants have adequate time to locate and isolate the requested code, as well as load the code on a secure computer that can be transported to the offices of Defendants' outside counsel. This District has adopted similar notice provisions in several recently-entered protective orders. *See, e.g.*, Defs. Ex. 1, 2:13-cv-518-JRG (Dkt. No. 24, entered Nov. 13, 2013) at ¶ 11(b); Defs. Ex. 3, 2:13-cv-269-JRG (Lead Case) (Dkt. No. 71, entered Jan. 24, 2014) at ¶ 11(b); and Defs. Ex. 4, 2:13-cv-378-JRG (Lead Case) (Dkt. No. 66, entered Jan. 28, 2014) at ¶ 11(b).

Fact discovery is not set to close in this matter until February 9, 2015. Thus, there is more than adequate time to secure all necessary discovery of source code information

while still meeting the requirements of the notice provisions in Defendants' Proposed PO.

- *Limitation on use of outside computers in the review room (¶ 12(h))*:  Defendants' proposal expressly allows a Receiving Party's expert or counsel to take handwritten notes regarding the source code, but does not allow for the taking of electronic notes. Defendants' proposal also does not permit any computers in the Source Code Review Room, other than the stand-alone review terminal. The reason for these requirements is obvious—it is very difficult to control the dissemination of electronic descriptions or copies of source code information.  Defendants would have no way of ensuring that any outside computers used in the secure Source Code Review Room are, and remain at all times, not connected to any wireless or wired network, or that the laptops do not contain a functioning camera.  In general, the presence of other insecure electronics in the source code review room undermines important provisions in the Protective Order, which prohibit capturing confidential information for transport elsewhere in an insecure manner.  The slight inconvenience of having to take handwritten notes pales in comparison to Defendants' interest in protecting their highly valuable source code.

This District has adopted similar provisions restricting the use of outside computers in the source code review room in several recently-entered protective orders. *See, e.g.*, Defs. Ex. 1, 2:13-cv-518-JRG (Dkt. No. 24, entered Nov. 13, 2013) at ¶ 11(c)(ii); Defs. Ex. 3, 2:13-cv-269-JRG (Lead Case) (Dkt. No. 71, entered Jan. 24, 2014) at ¶ 11(c)(ii); and Defs. Ex. 4, 2:13-cv-378-JRG (Lead Case) (Dkt. No. 66, entered Jan. 28, 2014) at ¶ 11(c)(ii).

- *Visual monitoring (¶ 12(i))*:  Defendants' Proposed PO is narrowly tailored so that the Producing Party may only monitor the Source Code review "to ensure that no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or transmitted in any way."  As introduced above, the dissemination of Defendants' source code could result in severe competitive harm.  As a result, Defendants need a mechanism for ensuring that unauthorized records or copies of the produced source code are not created or transmitted.  Such monitoring would not involve the monitoring of any privileged communications, nor would it interfere with plaintiff's ability to review code in any way.

This District has adopted similar provisions allowing for the visual monitoring of source code review in several recently-entered protective orders.  *See, e.g.*, Defs. Ex. 1, 2:13-cv-518-JRG (Dkt. No. 24, entered Nov. 13, 2013) at ¶ 11(c)(iv); Defs. Ex. 3, 2:13-cv-269-JRG (Lead Case) (Dkt. No. 71, entered Jan. 24, 2014) at ¶ 11(c)(iv); and Defs. Ex. 4, 2:13-cv-378-JRG (Lead Case) (Dkt. No. 66, entered Jan. 28, 2014) at ¶ 11(c)(iv).

- *Electronic copies of Source Code Material (¶ 12(j))*:  Defendants' Proposed PO restricts the creation of electronic copies of Source Code Material by a Receiving Party, unless written consent is received from the Producing Party.  Once again, this provision is designed to allow Defendants' to have some control over the creation of electronic copies of its valuable source code.  Moreover, the provision does not preclude the creation of electronic copies of Source Code Material for inclusion in pleadings filed with the Court.  Rather, it merely requires a Receiving Party, in addition to engaging in a meet and confer with the Producing Party, to control access to the Source Code Material and ensure that confidentiality of the information is properly maintained.

It is unlikely this procedure will be required more than once or twice over the course of this litigation. Moreover, the procedure is no more than a conference to discuss the specific circumstances requiring creation of an electronic copy of source code.  Proactive communication between the parties should be required before any digital copies of source code are made and transmitted electronically.

This District has adopted similar limitations on the creation and use of electronic copies of source code information in several recently-entered protective orders.  *See, e.g.*, Defs. Ex. 1, 2:13-cv-518-JRG (Dkt. No. 24, entered Nov. 13, 2013) at ¶ 11(c)(xii); Defs. Ex. 3, 2:13-cv-269-JRG (Lead Case) (Dkt. No. 71, entered Jan. 24, 2014) at ¶ 11(c)(xii); and Defs. Ex. 4, 2:13-cv-378-JRG (Lead Case) (Dkt. No. 66, entered Jan. 28, 2014) at ¶ 11(c)(xii).

- *Limitations on print-outs of Source Code Material (¶ 12(k))*:  Defendants' Proposed PO contains limitations on the number of continuous pages that can be printed (5) before the Receiving Party must demonstrate a need for additional pages, as well as a limit on the total number of pages for printing (20).  Neither of these limits is a severe restriction as Plaintiff contends.  Rather, these limits are designed to ensure that the party reviewing the source code will do so in a secure environment electronically, and not attempt to print large sections of the code for review and analysis outside of the secure environment.  If the reviewing party were permitted to do so, it would frustrate the entire purpose of producing the source code on a secure computer and greatly increase the risk of the source code being inadvertently disclosed in an improper manner.  Moreover, once the reviewing party has isolated the limited sections of the code that are actually necessary for inclusion in a pleading or expert

report, it is highly unlikely that those sections would exceed the proposed limits on pages for printing.

Further, Defendants' proposal of providing the printed sections—if they are not excessive and done for a permitted purpose—within 14 days is certainly reasonable in light of the highly sensitive nature of this information.

This District has adopted similar limitations on the printing of source code information in several recently-entered protective orders. *See, e.g.*, Defs. Ex. 1, 2:13-cv-518-JRG (Dkt. No. 24, entered Nov. 13, 2013) at ¶ 11(c)(v); Defs. Ex. 3, 2:13-cv-269-JRG (Lead Case) (Dkt. No. 71, entered Jan. 24, 2014) at ¶ 11(c)(v); and Defs. Ex. 4, 2:13-cv-378-JRG (Lead Case) (Dkt. No. 66, entered Jan. 28, 2014) at ¶ 11(c)(v).

- *Use of source code at depositions (¶ 12(n))*: Defendants' Proposed PO does not restrict the use of source code at depositions.  Rather, it merely requires that the Receiving Party notify the Producing of the portions of the Source Code it intends to use at the deposition so that the Producing Party can bring the printed portions.  This provision does not prejudice Plaintiff (the likely Receiving Party) in any way.  Rather, it merely allows Defendants to control the circulation of printed copies of their proprietary code that are produced in this case and still permits Plaintiff unrestricted use of source code at depositions.

This District adopted similar provisions regarding the use of source code information at depositions in several recently-entered protective orders. *See, e.g.*, Defs. Ex. 1, 2:13-cv-518-JRG (Dkt. No. 24, entered Nov. 13, 2013) at ¶ 11(c)(xi); Defs. Ex. 3, 2:13-cv-269-JRG (Lead Case) (Dkt. No. 71, entered Jan. 24, 2014) at ¶ 11(c)(xi); and

Defs. Ex. 4, 2:13-cv-378-JRG (Lead Case) (Dkt. No. 66, entered Jan. 28, 2014) at ¶ 11(c)(xi).

**3.   Patent Prosecution Bar** -- *¶ 13 of PO*

Plaintiff appears to object to two aspects of Defendants' proposed prosecution bar: (1) restrictions on the acquisition of patent rights and (2) the length of the bar (two years vs. one year).  The prosecution bar provision in Defendants' Proposed PO is reasonable and necessary to protect them from competitive harm which would arise from the use of Protected Material in drafting and restructuring claims as well as patent acquisition activities.  Defendants have narrowly tailored the prosecution bar so that it only covers individuals that receive information designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE."

With respect to the bar on patent acquisition practices, Defendants assert that such a restriction is justified and important given the nature of the proprietary technology at issue in this matter.  Moreover, this risk is heightened in this matter given that Plaintiff is solely in the business of monetizing patent rights.  Allowing Plaintiffs' counsel to use produced confidential information to acquire patents to assert against Defendants' products would be highly prejudicial. Plaintiff's counsel should also not be permitted to advise other clients on patent acquisition in light of information they learned through the production of Defendants' confidential information.

Moreover, Defendants' Proposed PO only extends the preclusion period from 1 year to 2 years.  That extra year helps ensure covered confidential information will pass from the individual's mind before he/she begins prosecuting again.  Plaintiff makes no particularized showing that 2 years imposes a hardship that 1 year does not.

Dated: June 3, 2014                    Respectfully submitted,


By: */s/ Craig Tadlock*
    Craig Tadlock
    Texas Bar No. 00791766
    John J. Harvey, Jr.
    Texas Bar No. 09179770
    Keith Smiley
    Texas Bar No. 24067869
    **TADLOCK LAW FIRM PLLC**
    2701 Dallas Parkway, Suite 360
    Plano, Texas  75093
    Telephone: 903-730-6789
    craig@tadlocklawfirm.com
    john@tadlocklawfirm.com
    keith@tadlocklawfirm.com

    **ATTORNEYS FOR PLAINTIFF LONG
    CORNER CONSUMER ELECTRONICS LLC**


  */s/ Michael Hatcher*
**Michael D. Hatcher**
Texas State Bar No. 24027067
Email: mhatcher@sidley.com
**John P. Wisse**
Texas State Bar No. 24060848
Email: jwisse@sidley.com

**Sidley Austin LLP**
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

**ATTORNEYS FOR DEFENDANT APPLE INC.**


  */s/ Alfredo A. Bismonte*
Alfredo A. Bismonte
abismonte@beckllp.com
*Lead Counsel*
Jeremy M. Duggan
jduggan@beckllp.com
BECK, BISMONTE & FINLEY, LLP

150 Almaden Boulevard, 10th Floor
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 738-0790

E. Glenn Thames, Jr.
Texas State Bar No. 00785097
glennthames@potterminton.com
POTTER MINTON
A PROFESSIONAL CORPORATION
110 N. College Avenue, Suite 500
Tyler, TX 75702
(903) 597-8311 Telephone
(903) 593-0846 Telecompier

**COUNSEL FOR ASUS COMPUTER
INTERNATIONAL**


 */s/ Kellie M. Johnson*
Fred I. Williams
Texas State Bar No. 00794855
fwilliams@akingump.com
Marwan Elrakabawy
Texas State Bar No. 24055447
melrakabawy@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
600 Congress Avenue, Suite 1350
Austin, Texas 78701
Telephone: 512.499.6200
Facsimile:  512.499.6290

Eric J. Klein
State Bar No. 24041258
eklein@akingump.com
Kellie M. Johnson
State Bar No. 24070003
kmjohnson@akingump.com
Jesse Snyder
Texas State Bar No. 24083884
jdsnyder@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  214.969.2800
Facsimile:  214.969.4343

**ATTORNEYS FOR DEFENDANT LENOVO
(UNITED STATES) INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that the parties have met and conferred at length regarding a Protective Order for this case. The parties agree to and move for the entry of a Protective Order; however, three (3) sections remain in dispute between the parties regarding certain terms of the Protective Order. As a result, this is an opposed motion.

*/s/ Craig Tadlock*
Craig Tadlock

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 3, 2014, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.

*/s/ Craig Tadlock*
Craig Tadlock